## Elias Berla

*v.*

## Florence R. Strauss et al.

[Submitted August 1st, 1908.   Decided September 12th, 1908.]

1. Upon a bill filed by one former copartner against the devisees of another deceased copartner to obtain a decree establishing a resulting trust in favor of the complainant in respect of a lot of land the title to which had stood in the name of the firm but was afterward acquired by such deceased copartner, upon the ground that the purchase by such deceased copartner was with the joint funds of the firm of which the complainant and deceased copartner were members, and that the purchase inured to the benefit of the complainant to the extent of an undivided half interest therein, and praying that the deceased copartner's devisees be compelled to transfer to the complainant a half interest in the land, and account for all transactions concerning the property since the title was acquired by the deceased copartner, evidence examined and— *Held*, insufficient to prove the case laid in the bill.

2. The burden of proof is on the complainant, very strongly, in view of the circumstance of the death of his copartner, and his not bringing his suit until after such copartner's death, or until the lapse of about twelve years from the date of the questioned transaction.

3. The evidence upon which a court may go to establish a resulting trust must not only satisfy the burden of proof, but must be clear and convincing.

4. The great delay suffered by the complainant in the presentation of his claim to the court not accounted for, and his failure to make any demand upon the deceased copartner in his lifetime, is still another reason why he should be charged with the utmost burden of proving his case thoroughly.

5. Inasmuch as the bill will not lie as a bill to enforce a resulting trust, it will not be retained and an amendment thereof permitted, for the purpose of settling partnership accounts, because to change it into a partnership bill would require fundamental changes which only should be asserted by a new or original bill.

6. A dismissal of the bill carries with it the claim for an accounting.

On final hearing on bill, answer, replication and proofs.

*Mr. Samuel Kalisch* and *Mr. Chauncey G. Parker,* for the complainant.

*Mr. Louis Hood,* for the defendant.

HOWELL, V. C.

The bill in this case is filed for the purpose of having this court decree a resulting trust in favor of the complainant in a tract of land in the northern part of the city of Newark. Some time in 1891 the complainant, Berla, with Barnard Strauss and Samuel A. Smith became partners under the firm name of Strauss, Smith & Berla and were engaged in the manufacture of fertilizers upon the plot of land in question. The title to the land was in a corporation known as the Newark Sanitary and Manufacturing Company. This company in 1891 mortgaged the premises in question to August Rommel to secure the sum of $12,000, payable in four years, with interest. The Newark Sanitary and Manufacturing Company got into financial difficulties and on September 26th, 1893, the land owned by it was sold by the sheriff of the county of Essex under a common law execution to Strauss, Smith & Berla, and a deed made to them as tenants in common on that day. The firm of Strauss, Smith & Berla continued to occupy the premises until some time in the year 1895, when they removed to another part of the city. They still retained title to the said lands, subject to the said mortgage. For some default in the payment of interest, the mortgagee in October, 1895, began a suit for the foreclosure of his lien. This suit, however, was settled by the payment of the arrears of interest and the costs. Mr. Rommel died in 1896 still the owner of the mortgage in question, leaving a will and appointing executors, who, on August 12th, 1896, instituted proceedings anew for the foreclosure of the said mortgage, in which proceedings there was a final decree and execution in February of 1897. On April 7th, 1897, Rommel's executors assigned the mortgage and the decree thereon to Joseph Rice, of Trenton, who was the father-in-law of Strauss, in consideration of the sum of $10,400 paid by Strauss to Rommel's solicitor. On April 22d the property was sold by Sheriff Doremus by virtue of the exe-

cution in the foreclosure proceedings and a deed of conveyance was made to Rice by the sheriff on May 1st, 1897. Rice held the title until January 3d, 1900, when he made a conveyance to Strauss by deed dated on that day, but not recorded until October 6th, 1900.

While Strauss, Smith & Berla were the owners of the fee of the said lands they obtained from the riparian commissioners of the state a lease of the riparian rights, which was by its terms convertible into a grant upon certain terms and conditions therein set out. On September 4th, 1900, Berla, the complainant, and Smith executed an assignment of this lease to Strauss. Strauss then applied for a riparian grant and received it on September 20th, 1900. Strauss died in 1906, leaving a widow and one child, who are made the defendants to this suit. Both have answered. The complainant's case is that immediately after the beginning of the first foreclosure suit in October, 1895, Strauss, Smith & Berla discussed between themselves the advisability of raising a fund to pay off the Rommel mortgage; that Strauss stated to his partners that this transaction would require about $2,750 from each of them; that Smith made his note to the order of Strauss for $2,746.67, dated December 12th, 1895, and that Berla about the same time gave Strauss $250 in cash and his note for $2,500, dated December 11th, 1895, and that with these amounts and an equal amount to be contributed by Strauss he was to negotiate for the purchase or redemption of the $12,000 mortgage held by Rommel. The Smith note matured on April 12th, 1896, and was renewed on April 13th, 1896, for $2,596.67, he having paid $150 at the date of the renewal. About the time the second note made by Smith matured, he found himself on account of financial embarrassment unable to maintain his place in the enterprise and he thereupon transferred or surrendered his interest to Strauss and Berla, who undertook to discharge the obligation of the Smith note and release Smith therefrom. It may be said at this point that the Smith note was paid by Strauss and Berla, each paying one-half thereof. The bank account in which the Smith note appears was kept in the Merchants National Bank of Newark, in

the name of Elias Berla, but the transactions were wholly, so Mr. Berla says, on the joint account of himself and Strauss.

The Berla note for $2,500, dated December 11th, 1895, was discounted by the German National Bank, and the proceeds thereof placed to the credit of Strauss. This note was renewed at periods of four months until September 16th, 1904, on which day Berla made his last renewal. This last note was for $375 and was paid at its maturity on January 16th, 1905.

There is no evidence whatever that Strauss kept this fund separate from his other moneys or that he ever actually contributed any money of his own to any such fund. The theory of the bill is that when Strauss purchased the mortgage and when he subsequently purchased the land in the foreclosure proceedings under the same mortgage he made the purchase with these joint funds and that the purchase inured to the benefit of Berla to the extent of an undivided half interest therein, Smith's interest having been eliminated as early as 1906, and the prayer is that the Strauss devisees may be compelled to transfer to Berla a half interest in the land, and that they may account to Berla for all the transactions concerning the property since the title was taken by Rice and subsequently by Strauss.

There are, however, some facts which militate strongly against the complainant's view of the case. The first that I shall consider are the transactions relating to the Smith note of December 12th, 1895. As has been said, this note was discounted by the Merchants National Bank, the date of the discount being December 18th, 1895, and so far as there is any record of this note it appears in an account kept in the name of Elias Berla in that bank. The account shows the original discount of the note on December 18th, 1895, its renewal on April 15th, 1896, and beyond this we have no history of the note whatever, excepting that Mr. Berla testifies that it was eventually paid by him and Mr. Strauss equally. An examination of the merchants bank account in connection with the checks and vouchers shows that nearly if not quite all the money that was derived from the Smith note was paid out during the year 1896, a year or more before the foreclosure sale, probably for the general firm expenses, and that no portion of it was used or could have been

used by Mr. Berla, who had charge of the account, for the purchase of the lands in question. Mr. Berla says in his testimony, at page 67, that not a dollar of the proceeds of that original Smith note went to Mr. Strauss individually, but that it went for the benefit of the partnership.

The foreclosure suit went to a final decree on February 10th, 1897. When the sale took place April 20th, 1897, the amount due on the decree for the mortgage debt, interest and costs, was $12,683.41. The mortgage and the decree were assigned to Rice on April 7th, 1897, at which time Strauss paid the complainant's solicitor therefor $10,400. According to the complainant's theory he should have been called upon to furnish one-half of that money or $5,200. So far as I can see from the testimony, the only money that he claims to have furnished was $2,750 (cash, $250; note, $2,500), because I think it sufficiently appears that no substantial portion of the proceeds of the Smith note could, by any probability, have gone into the transaction, and he thus permitted Strauss to advance from his own funds $2,450 on account of this purchase, which the complainant, according to his own theory of the case, should have advanced out of his own funds.

Another fact concerning which there is no dispute, which is inconsistent with the complainant's theory, is the series of transactions relating to the riparian rights appurtenant to the property in question. Strauss, Smith & Berla had a lease of the riparian rights which were converted into a grant to Strauss on September 20th, 1900. In order to obtain the grant it appears that it was necessary for Strauss to first obtain from his partners a transfer of the lease. Such a transfer was executed by Mr. Berla, the complainant, and Mr. Smith, to Mr. Strauss, on September 4th, 1900, and the execution acknowledged before a master in chancery in the office of Strauss' solicitors. When the grant was made, Strauss paid to the state the sum of $1,100 therefor, one-half of which, according to the complainant's theory, should have been paid by him; yet although he executes in due form a solemn instrument of assignment which enables Strauss to obtain a grant, he does not appear to have made any inquiry as to the reason why the assignment was made or what Strauss intended

to do with it, or why it was made to Strauss and not to Rice, nor did he inquire as to the expense, or whether any portion of it was to be charged up against him.

The complainant cannot say that he expected that these large items of expense would be obtained from sales of the property. He appears not to have made any inquiry about the property or its disposition until after Strauss' death, and he did not know until the summer of 1906 that Strauss had sold a portion of the land to Maas & Waldstein. It does not appear that Strauss ever made any demand on Berla for any portion of the moneys which he was paying out on account of this property, showing that he had no idea that Berla had any interest or claimed any interest in the property.

The evidence relating to the promissory note made by Berla to Strauss for $2,500 is that of Mr. Berla alone, and while the bank account of the German National Bank apparently shows that this money went eventually to Mr. Strauss, I am not satisfied, in view of the circumstances of the case as above recited, to so appropriate it. It was not enough to pay for the half interest in the mortgage which Mr. Berla now claims, and while it would be unfair to charge Mr. Berla with an attempt to overreach the estate of a deceased person who is not here to tell his own story about it, I feel that I must apply the ordinary rules concerning the burden of proof. The burden of proof is on the complainant, and in fact is on him very strongly in view of the circumstance that Mr. Strauss is dead and that Mr. Berla did not bring his suit until after the death of Mr. Strauss or until after the lapse of about twelve years from the date of the transaction. The evidence upon which a court may go to establish a resulting trust must not only satisfy the burden of proof, but must be clear and convincing. Whatever the fact may be, it is very clear from the circumstances that Mr. Strauss, who was well known in Newark as an upright business man, had no idea that anyone was interested in the property besides himself. There is still another reason why the burden of proof should be put up sharply to the complainant, and that is because of the great delay suffered by him in the presentation of his claim to the court. The delay is not accounted for, nor is there any reason given why the com-

plainant did not make a demand upon Mr. Strauss in his lifetime. It may be that the great friendship which existed between these two men might have operated to prevent any writings being made with reference to the transaction, but it will hardly excuse the complainant in the present circumstances from being charged with the utmost burden of proving his case thoroughly.

I must therefore conclude that the complainant has not proved the case laid by his bill, and that he can have no relief upon the theories which I have discussed.

It is urged by the complainant that even though the bill will not lie as a bill to enforce a resulting trust, yet that it will lie for the purpose of settling partnership accounts, and that the bill should be retained, and, if necessary, amended for that purpose in case the court should think that it failed of its original purpose. I have read the bill with reference to this suggestion and conclude that it ought not to be held as a partnership bill. To change it into a partnership bill would require fundamental changes which only should be asserted by a new and an original bill. I will therefore advise a decree that the bill be dismissed.

A dismissal of the bill carries with it the claim for an accounting, which I have not discussed, but, of course, it is quite evident that if the main case falls there can be no accounting.